UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER CAVANAUGH,

                    Plaintiff,

v.

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

Case No. No.  20-10034

District Judge Paul D. Borman

Magistrate Judge R. Steven Whalen

_____/

## REPORT AND RECOMMENDATION

Plaintiff Heather Cavanaugh brings this action under 42 U.S.C. §405(g), challenging Defendant Commissioner's denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment  [ECF No. 13] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 11] be DENIED.

# I.   PROCEDURAL HISTORY

On August 9, 2017, Plaintiff filed applications for DIB and SSI, alleging disability as of September 1, 2011.  ECF No. 9, PageID.206 (Tr. 175, 177).[1]  Upon the initial denial of the claim, she requested an administrative hearing, held on October 11, 2018 in Flint, Michigan (Tr. 28).  Administrative Law Judge ("ALJ") Andrew Sloss presided.  Plaintiff, represented by attorney Clifford Walkon, testified (Tr. 31-42), as did Vocational Expert ("VE") Stephanie A. Lorey (Tr.  43-46).  On December 31, 2018, ALJ Sloss determined that Plaintiff was not disabled  (Tr. 10-22).  On November 19, 2019, the Appeals Council declined to review the ALJ's decision (Tr. 1-3).   Plaintiff filed a complaint in this Court on January 7, 2020.

# II.  BACKGROUND FACTS

Plaintiff, born on May 19, 1976, was 42 at the time of the ALJ's decision  (Tr. 22, 175).  She completed one year of college in 2013 (Tr. 206).   Her former work includes work at a plant/factory, work at a pharmacy, and work at a pet store  (Tr. 207).   She alleges disability resulting from Post Traumatic Stress Disorder ("PTSD"), depression, diabetes, hypertension, anxiety, allergies, hip pain, and a June, 2017 left foot fracture (Tr. 205).

## A.  Plaintiff's Testimony

Plaintiff offered the following testimony.

She attended college but did not obtain a degree (Tr. 31).  She was able to drive (Tr.

---

[1] References to the administrative transcript (ECF No. 9) are henceforth cited by transcript page number (Tr. xx).

31).  Her past work included a job as a pharmacy technician requiring her to lift between 25 and 50 pounds maximum (Tr. 32).  Her job as a cashier at 7-11 required her to lift between 50 and 100 pounds (Tr. 33).

Plaintiff was unable to work due to the conditions of diabetes, hypertension, psoriatic arthritis, PTSD, depression, and anxiety (Tr. 33).  She had experienced diabetes for 20 years and currently took insulin (Tr. 34).  Symptoms were limited to her vision "going in and out" (Tr. 34).  Her hypertension was controlled with medication (Tr. 34).  The psoriatic arthritis caused knee and hip pain (Tr. 34).  She saw a rheumatologist and a dermatologist for the condition (Tr. 34).

Her psychological symptoms included excessive sleep and flashbacks (Tr. 35).  She saw a therapist once a week and took psychotropic medication (Tr. 35).  Her activity level varied depending on her psychological symptoms (Tr. 36).  On good days, she could go to an appointment and grocery shop, but on bad days she slept all day (Tr. 36).  She had an equal number of good and bad days each month (Tr. 36).

In response to questioning by her attorney, Plaintiff testified that she had been hospitalized for two-and-a-half weeks earlier in the year after developing pancreatitis (Tr. 37).  The psoriatic arthritis also affected her arms and hands (Tr. 37).  She experienced hand stiffness and problems moving her hands (Tr. 38).  In addition to weekly counseling sessions she saw a psychiatrist once a month (Tr. 38).  Her daytime sleeping occurred in the afternoon for one to three hours (Tr. 39).  She experienced flashbacks multiple times a day lasting

between five seconds and half an hour (Tr. 39). She was unable to concentrate during flashbacks (Tr. 39). She had been unable to find a medication for psoriatic arthritis that worked effectively, adding that she experienced the medication side effects of headaches, nausea, and low libido (Tr. 40). She experienced improvement in hip and leg pain by lying down (Tr. 40). She spent two hours every afternoon reclining (Tr. 40). She was unable to sit or stand for more than 20 minutes before experiencing pain and anxiety (Tr. 41). She was unable to walk more than one block without experiencing leg heaviness (Tr. 41). She currently stood 5'10" and weighed 275 pounds, adding that she had gained weight in the past year due to stress and depression (Tr. 41-42). She had been advised to go into a "day program" or obtain inpatient treatment for psychological symptoms (Tr. 42). She had health insurance through her husband's employer (Tr. 42).

### B. Medical Records

### 1. The Treating Records

In March, 2011, Walter Barkey, M.D. observed blisters of the right arm and breast (Tr. 261). December, 2011 records by Bill Hukill, D.O. note that the condition of diabetes was asymptomatic (Tr. 598). He noted that Plaintiff was obese but denied muscle weakness or range of motion limitations (Tr. 599-600). Plaintiff exhibited a normal mood and affect with full orientation (Tr. 601).

In June, 2013, Dr. Barkey noted that upper body skin conditions would last for several weeks then disappear completely for up to a year (Tr. 260). Therapy records from the same

month note that Plaintiff was "proud of [her]self" for a reduction in anxiety (Tr. 276).

August, 2013 therapy records note mood improvement but that Plaintiff was "very busy" due to going to school and taking care of her children at the same time (Tr. 281). In October, 2016, Dr. Mora noted anxiety and a depressed mood but a cooperative attitude, good grooming and a normal thought process (Tr. 702-703).

In March, 2017, Noel Dryden-Minger, MS, LLP (therapist Minger) noted a depressed mood and that Plaintiff was frustrated at her inability to handle her emotions (Tr. 679). In August, 2017, therapist Minger noted a variable affect with agitation and depression (Tr. 764). Dr. Vora's notes from the same month note a normal gait, a neat appearance, and that Plaintiff was cooperative (Tr. 766). In December, 2017, Dr. Vora completed a mental impairment questionnaire, finding that due to psychological symptoms, Plaintiff would miss more than four days of work each month, would be off task at least 20 percent of the workday, was unable to deal with workplace changes; would distract coworkers; and was incapable of accepting criticism (Tr. 795). He noted the symptoms of panic attacks, depression, anxiety, lack of motivation, mood swings, and concentrational problems (Tr. 796). He opined that Plaintiff would be unable to work due to psychological symptoms (Tr. 799). He gave Plaintiff a "fair" prognosis (Tr. 800).

March, 2018 records by Dr. Hukill note that Plaintiff was obese with a decreased range of the spine but exhibited normal posture and a normal gait (Tr. 804, 808). He recommended weight loss and exercise (Tr. 809). July, 2018 records note that a physical examination was

unremarkable and that Plaintiff was alert and appropriate following a hospitalization for pancreatitis earlier in the year (Tr. 964). August, 2018 records by Dr. Vora note that Plaintiff exhibited a normal memory and thought processes (Tr. 968).

In September 2018, Dr. Vora completed a medical questionnaire, noting that he had treated Plaintiff since 2013 (Tr. 1053). He noted that due to depression, anxiety, and PTSD, Plaintiff experienced lack of motivation, mood swings, irritability, poor concentration, and difficulty interacting socially (Tr. 1053). He noted that he treating Plaintiff on a monthly basis (Tr. 1054). He opined that Plaintiff's condition was exacerbated by her need to care for a special needs child (Tr. 1054). The same month, therapist Minger, noting that she had treated Plaintiff weekly for the past four years, endorsed Dr. Vora's finding that psychological symptoms would preclude all work (Tr. 1057-1058). She opined that Plaintiff's symptoms affected her daily functioning (Tr. 1058). She noted that Plaintiff's ability to enter a day program or seek inpatient treatment was prevented by the care of her child with special needs (Tr. 1043, 1058). She found that Plaintiff's physical conditions exacerbated the psychological symptoms (Tr. 1058).

## 2. The Non-Treating Records

In November, 2017, Jerry Csokasy, Ph.D. performed a non-examining review of the treating and consultative records, finding that Plaintiff's psychological limitations were exclusively mild (Tr. 79). The same day, Robin Mika, D.O. performed a non-examining review of the evidence regarding the physical conditions, finding that Plaintiff could lift 20

pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push/pull without limitation in the lower extremities (Tr. 84).  She found that Plaintiff was limited to occasional climbing and crawling and frequent balancing, stooping, kneeling, and crouching (Tr. 84-85).  She found that Plaintiff was limited to frequent (as opposed to *constant*) fingering and feeling (Tr. 85).  She found that Plaintiff should avoid concentrated exposure to extreme cold, vibration, airborne contaminants, and hazards such as machinery and heights (Tr. 85-86).  She cited records showing good motor strength in all extremities and a normal gait (Tr. 86).

### C.  Vocational Testimony

VE Stephanie Lorey classified Plaintiff's past work as a pharmacy technician as light and semiskilled (exertionally medium as performed) and cashier, unskilled/light (heavy as performed),[2] (Tr. 43-44).  The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> L]ight work . . . except she can occasionally climb ramps or stairs, and can frequently balance. She is limited to frequent handling and fingering bilaterally. She must avoid concentrated exposure to extreme cold, and even

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

moderate exposure to vibration. She must avoid concentrated exposure to respiratory irritants and to hazards. She is limited to simple, routine tasks. Could she perform any of her past work? (Tr. 44).

The VE testified that the above limitations would allow for Plaintiff's past relevant work as a cashier as the job was generally performed in the national economy but not "as performed" at the medium exertional level (Tr. 44). She testified that the need to sleep all day or miss more than one day of work each month would be work preclusive (Tr. 44). She stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") and her own professional experience (Tr. 44-45).

In response to questioning by Plaintiff's attorney, the VE stated that a limitation to "superficial contact" with the public, the need to be off task 20 percent of the workday, reclining for up to two hours in an eight-hour workday, and a limitation to the occasional use of the upper extremities would eliminate all of the past relevant work (Tr. 45-46).

### D. The ALJ's Determination

Citing the medical transcript, ALJ Sloss found that Plaintiff experienced the severe impairments of osteoarthritis, major depressive disorder, generalized anxiety disorder, and PTSD but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13). He found that the conditions of diabetes, obesity, hypertension, asthma, and psoriatic arthritis were non-severe because they had been successfully "treated, controlled, [or] stabilized" (Tr. 12-13).

The ALJ found that Plaintiff experienced  moderate limitation in concentration, persistence, or pace and mild limitation in understanding, remembering, or applying information, interacting with others, and adaptation  (Tr. 14).

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work with the following additional restrictions:

> [C]laimant can occasionally climb ramps or stairs and can frequently balance. The claimant is limited to frequent handling and fingering bilaterally. The claimant must avoid concentrated exposure to extreme cold, and even moderate exposure to vibration. The claimant must also avoid concentrated exposure to respiratory irritants and to hazards. The claimant can perform simple, routine tasks.  (Tr. 15).

Citing the VE's testimony (Tr. 44), the ALJ determined that Plaintiff could perform her past relevant work as a cashier as the job was generally performed in the national economy (Tr. 21).

 In support of the non-disability finding, the ALJ noted that Plaintiff, by her own account, was able to grocery shop, sometimes prepare meals, do housework, walk a block, lift up to 15 pounds, waken her children, take care of the family cat, and care for her personal needs (Tr. 15-16).  The ALJ found the multiple disability opinions by Dr. Vora "not persuasive" because they were "vague" and did not "specifically address or identify which functional limitations [were] present" (Tr. 21).  He noted further that Dr. Vora's opinions were not consistent with other treating records showing an unremarkable psychological presentation (Tr. 20-21).   He found counselor Minger's statements unpersuasive for the same reasons, noting further that Minger was not an acceptable

medical source (Tr. 21).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).  The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 139 S. Ct. at 1152; 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*).  Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).  However, in determining whether the

-10-

evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

# V. ANALYSIS

Plaintiff makes three arguments in support of remand, contending first that the ALJ erred at Step Two of the sequential analysis by declining to include the condition of psoriatic arthritis, diabetes, and obesitya mong the severe impairments. *Plaintiff's Brief,* ECF No. 11, PageID.1101. Second, she faults the ALJ for finding that the opinions of treating psychiatrist Dr. Vora and treating therapist Minger were not persuasive. *Id.* at 1106. Third, she argues that VE's testimony that she could perform her past relevant work as a cashier stands at odds with the limitations in the hypothetical question and the RFC found in the administrative opinion. *Id.* at 1111.

## A. Diabetes, Obesity and Psoriatic Arthritis

Plaintiff takes issue with the ALJ's Step Two finding that the conditions of diabetes, obesity, and psoriatic arthritis did not create significant work-related limitation (Tr. 12).

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir. 1985). At Step Two, a condition can be deemed "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.' " *Id.* at 90 (*citing Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). 20 C.F.R. §§ 404.1522(a) and 416.922(a) define a non-severe impairment as one that does not "significantly limit [the]

-12-

physical or mental ability to do basic work activities." *See also* SSR 85-28 1985 WL 56856, at *3 (1985)(same). "Basic work activities" include the physical functions "such as walking, standing, sitting" as well as the capacity for "seeing, hearing, and speaking." §§ 404.1522(b)(1-2), 416.922 . Despite the low bar for qualification as a "severe" impairment, the omission of an impairment causing work-related limitations at Step Two is of "little consequence," provided that the ALJ considers "all impairments" in crafting the RFC. *Pompa v. Comm'r of Social Sec.*, 73 Fed.Appx. 801, 803, 2003 WL 21949797, * 1 (6th Cir. August 11, 2003); *see also Anthony v Astrue*, 266 Fed Appx 451, 457 (6th Cir. February 22, 2008)(no reversible error where the ALJ took into account both the severe and non-severe impairments at the remaining steps of the analysis).

At Step Two, the ALJ found that a number of conditions including diabetes, obesity, and psoriatic arthritis were non-severe, noting that the conditions "have either been successfully treated, controlled, stabilized, or otherwise do not more than minimally affect the claimant's ability to perform basic work activities" (Tr. 12-13).

As to the condition of diabetes, Plaintiff cites treating records showing elevated blood sugar levels, insulin use, and vascular problems. ECF No. 11, PageID.1104. However, the ALJ's finding that diabetes was not a severe impairment does not provide grounds for remand. The ALJ acknowledged Plaintiff's 20-year diagnosis of diabetes (Tr. 16) but that Plaintiff denied diabetic symptomology except for her vision "going in and out" (Tr. 34). The ALJ noted that an eye exam from the year before the onset of disability was unremarkable

(Tr. 17) and the record does not otherwise support Plaintiff's report of eye problems.  The ALJ acknowledged that Plaintiff received (apparently effective) treatment for urinary frequency and for a diabetic ulcer of the toe (Tr. 17-18).   The ALJ provided a fulsome discussion of the diabetic treatment but noted that Plaintiff repeatedly exhibited a normal gait, full muscle strength, and the ability to engage in a number of regular activities  (Tr. 15-17).  The ALJ cited Dr. Hukill's treating observation that as of May, 2018, Plaintiff exhibited a normal gait, station, and posture (Tr. 19).  Dr. Hukill's findings are consistent with my own review of both the physical and psychological records showing a normal gait (Tr. 766, 808).

For overlapping reasons, the ALJ's finding that the condition of obesity was non-severe does not provide grounds for remand.  The ALJ referenced the condition of morbid obesity multiple times in the decision (Tr. 12-13, 17-18).  He observed that Plaintiff was able to engage in a wide range of activities and demonstrated a normal gait.  While under SSR 02–1p, 2002 WL 34686281, at *3 (June 21, 2002), the Commissioner must conduct an individualized assessment of the impact of the claimant's obesity on his or her functional abilities, the Ruling "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec*., 359 Fed. Appx. 574, 577 (6th Cir. 2009).  SSR 02-1p "does not impose any type of separate procedure that an administrative law judge must follow.   Instead, a judge should simply consider a claimant's obesity in combination with other impairments when proceeding through the normal five-step disability

analysis." *Stewart v Comm'r of Soc Sec*, 811 Fed Appx 349, 354 (6th Cir. May 5, 2020)(internal citations and punctuation omitted).  Here, the ALJ not only discussed the condition at Step Two, but provided a rationale for the limitations found in the RFC. Likewise, the ALJ's finding that the condition of psoriatic arthritis was non-severe does not warrant a remand.  The ALJ acknowledged Plaintiff's testimony that psoriatic arthritis caused significant extremity pain (Tr. 16, 34).  The ALJ noted however, that Plaintiff's history of treatment for the condition was routine and that as of May, 2018, Dr. Hukill observed an unremarkable gait, station, and posture (Tr. 19).  June, 2013 records note that Plaintiff experienced skin problems related to the condition on a sporadic basis (Tr. 260).

More generally, the ALJ noted that Plaintiff's claims of disabling work-related limitations were undermined by her November, 2012 statement that she was not interested in working and wanted to stay home with her children (Tr. 17, 338).  Counseling records from 2013 state that Plaintiff reported that she was "very busy" taking care of her children and taking college courses (Tr. 281).  Because the ALJ provided a well supported discussion of both the severe impairments and those he deemed non-severe, a remand on this basis is not warranted.

### B. Dr. Vora's and Therapist Minger's Opinions

In her second argument, Plaintiff contends that the ALJ erred by declining to credit therapist Minger's and psychiatrist Dr. Vora's opinions of disabling psychological limitation and further, failed to provide an adequate rationale for their rejection. ECF

No.11,PageID.1106 (*citing* Tr. 1053, 1057).  Plaintiff also  disputes the ALJ's finding that therapist Minger was not "an acceptable medical source."  *Id.* at 1108 (*citing* Tr. 21).

For claims filed before March 27, 2017, the opinion of a treating, acceptable medical source is accorded controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence." *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) 20 C.F.R. §§ 404.1527(c)(2),416.927;  SSR 96–2p, 1996 WL 374188, at *5 (1996).

However, because Plaintiff did not file an application for benefits until August, 2017, the rule according presumptively controlling weight to an acceptable treating source does not apply  (Tr. 10).  In contrast to the earlier claims where § 404.1527 or § 416.927 is applied, for claims made on or after March 27, 2017, the ALJ will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520c, 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). The factors to be considered in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or undermine the medical opinion. §§ 404.1520c(c), 416.920c. ALJs must articulate the "most important

factors of supportability and consistency" of the medical opinions but "are not required to[]
explain" the consideration given to the remaining factors. §§ 404.1520c(b); 416.920c(b).
Thus, Plaintiff's citation to cases applying the older regulations in support of her claim that
both therapist Minger's and Dr. Vora's opinions were entitled to presumptively controlling
weight is unavailing.

Further, Plaintiff's argument that therapist Minger's opinion, discussed at length in
Section II.B.1., *above,* was erroneously rejected  on the basis that she was not an "acceptable
medical source" is not well taken.   Plaintiff contends that Minger is a "limited licensed
psychologist" and thus, as a "licensed psychologist" which is included among the "acceptable
medical sources" listed in §§ 404.1502 and 416.902(a)(2).   ECF No. 11, PageID.1108.
However, case law from this district suggests that  a *limited* licensed psychologist is not an
acceptable source under the regulations.  *See Bethke v Comm'r of Soc Sec*, 2016 WL
6211729, at *7 (E.D. Mich. January 22, 2016)(Grand, M.J.)("limited license psychologist .
. . not an acceptable medical source") report and recommendation adopted No. 14-13694,
2016 WL 1266606 (E.D. Mich, March 31, 2016); *Fang Liu v Comm'r of Soc Sec,* 2020 WL
2733868, at *10 (E.D. Mich. May 26, 2020 (Borman, J.)("acceptable medical source . . .
exclude[s] . . . limited license psychologists").

 Moreover, even assuming that  the regulations can be interpreted to state that Minger
is an "acceptable source," the ALJ permissibly found that her opinion was not persuasive
because it was (1) not consistent with the record as a whole, (2) "vague," and, (3) the finding

of disability is an issue reserved to the Commissioner (Tr. 21). The ALJ cited the physical treating records made over the course of the relevant period showing a normal affect and mood along with Plaintiff's denial of anxiety or depression (Tr. 17). The ALJ correctly noted that Minger's finding of "'significant difficulties in a work environment'" was "vague" (Tr. 21 *quoting* 1058).

For the same reasons, the ALJ did not err in finding psychiatrist Vora's opinions "not persuasive" because they were not supported by the opinion as a whole and were "vague" (Tr. 21). The physical treating records repeatedly showing a normal psychological status stand grossly at odds with Dr. Vora's disability opinions. Dr. Vora stated that due to depression, anxiety, and PTSD, Plaintiff experienced lack of motivation, mood swings, irritability, poor concentration, and difficulty interacting socially (Tr. 1053). While Plaintiff notes that Dr. Vora opined that Plaintiff would experience psychologically based interruption at least 20 percent of the workday (Tr. 795), the ALJ noted that Dr. Vora did not otherwise quantify Plaintiff's symptomology, *e.g.* find that she experienced *moderate* limitations in social functioning or *marked* limitations in concentration, *etc.* The ALJ did not err in discounting Dr. Vora's opinion based on his failure to describe Plaintiff's alleged limitations in more concrete terms. *Torres v. Comm'r* of Soc Sec, 490 Fed Appx 748, 753, 2012 WL 3089334 (6th Cir. July 31, 2012)(ALJ permissibly discounted treating opinion on basis it "expressed very little about Torres's actual functional capacity"). Accordingly, the ALJ's finding that therapist Minger's and Dr. Vora's opinions were "not persuasive" should be upheld.

### C. The VE's Testimony

In her final argument, Plaintiff contends that the ALJ failed to support the finding that she could return to her past relevant work as a cashier.  ECF No.11, PageID.1111.  She notes that the *DOT* listing cited by the VE has a "reasoning level" of "3" which stands at odds with the limitation to "simple, routine tasks" included in both the hypothetical question to the VE and the RFC.  *Id.*  She relies on the SSA *Vocational Expert Handbook* which states that jobs with Level 3 reasoning requires an individual to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and '[d]eal with problems involving several concrete variables in or from standardized situations" and that "it could be argued that occupations requiring reasoning level 3 are too complex for an individual limited to 'simple' or 'repetitive' tasks" and that "[t]herefore, an apparent conflict exists."  *Id.* at 1112 (*quoting Vocational Expert Handbook,* 39 fn.52).  Citing SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), Plaintiff argues that given the apparent conflict, the ALJ erred by not conducting a more rigorous inquiry into whether the VE's job testimony was consistent with the information found in the *DOT.  Id.* at 1113.

The VE's testimony and the ALJ's findings, as discussed in more detail in Section II.C-D, *above,* are summarized in relevant part here: In response to the ALJ's restriction to "simple, routine tasks," the VE testified that the hypothetical  individual  could perform her past relevant unskilled work as a cashier as the work is generally performed in the national

economy, citing DOT 211.462-010 (Cashier II)[3] (Tr. 44). Then in response to the ALJ, the VE testified that her job findings were consistent with the information found in the *DOT* (Tr. 44-45). Plaintiff's counsel questioned the VE, but did not challenge the VE's citation to the DOT (Tr. 45-46). Adopting the VE's testimony, the ALJ determined that Plaintiff could perform her past relevant work as a cashier as the job was generally performed in the national economy (Tr. 21).

Plaintiff makes an ultimately unsuccessful argument that the ALJ's Step Four determination is not supported. First, the ALJ asked if the vocational testimony was consistent with the *DOT*, to which the VE responded affirmatively (Tr. 44-45). The ALJ was not required to conduct a more rigorous inquiry into whether the job findings conflicted with the *DOT. See Lee v. Comm'r of Soc. Sec.*, 529 Fed.Appx. 706, 715, 2013 WL 3388486 (6th Cir. July 9, 2013)(*citing Kyle v Comm'r of Soc. Sec*, 609 F3d 847, 858 (6th Cir. 2010)("the ALJ asked the VE if her testimony was consistent with the Dictionary, and she answered that it was. This effectively satisfied the Commissioner's burden"). Further, while Plaintiff's counsel questioned the VE at length, he did not challenge the VE's finding that Plaintiff could perform unskilled work with a reasoning level of 3 although the reasoning level for the position (along with the exertional and skill level) could have been ascertained at the hearing (Tr. 45-46 ). As such, Plaintiff's argument regarding the VE's

---

[3]DOT Code 211.462-010 (CASHIER II) is classified as exertionally light and unskilled with a reasoning level of 3. STRENGTH: L GED: R3 M2 L2 SVP: 2 DLU: 81.

testimony is waived.  *See Ledford v Astrue*, 311 Fed Appx 746, 757, 2008 WL 5351015 (6th Cir. December 19, 2008)("Despite . . . strident arguments on appeal challenging the vocational expert's testimony, Ledford did not bring to the attention of the administrative law judge the alleged conflict between the oral testimony and the job descriptions in the *Dictionary of Occupational Titles*." "[N]othing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge"); *See also Robilliard v Comm'r of Soc Sec*, 2020 WL 6588383, at *6 (E.D. Mich., October 20, 2020)(Grand, M.J.), report and recommendation adopted, 2020 WL 6585588 (E.D. Mich., November 10, 2020); *McCarley v. Berryhill*, 2018 WL 1477668, at *2 (E.D. Mich. Mar. 27, 2018)(Levy, J)(same).

Moreover, multiple courts have found that the SSA's *Vocational Expert Handbook* finding of an "apparent" conflict with the *DOT* does not require further investigation by the ALJ.  "The DOT's definition of level 3 reasoning does not, on its face, indicate that jobs with reasoning development level 3 involve more than simple, repetitive work." *Graves v Saul,* 2020 WL 896669, at *4 (N.D. Tex. February 25, 2020) "Unless a direct and obvious conflict exists between the VE's testimony and the DOT, the ALJ met his step five burden.  Graves did not—and based on the conflicting case law, cannot—establish a direct and *obvious* conflict between the VE's testimony and the DOT."  *Id.* (internal citations and punctuation omitted); *see also  Burnham v Saul*, 2020 WL 3259619, at *7 (S.D. Tex. April 14, 2020),

-21-

report and recommendation adopted No. CV H-19-1564, 2020 WL 3250978 (S.D. Tex. June 13, 2020)("The [Vocational Expert] handbook does not direct the ALJ or the ALJ's determination; indeed, the excerpt Plaintiff references merely directs the VE to '[b]e prepared to explain how the hypothetical individual could perform [a job with reasoning level 3]' as '[i]t could be argued that occupations requiring reasoning level 3 are too complex for an individual limited to simple or repetitive' tasks'"); *Medeiros v Saul*, 2020 WL 4583871, at *10 (D. Mass. August 10, 2020)("the VE handbook is not a source of law that binds this court, does not bestow upon claimants any judicially enforceable rights, and in any event does not support Medeiros's position"); *but see Halde v Saul,* 2020 WL 4470445, at *10 (D Nev, August 3, 2020)(ALJ's failure to resolve "apparent" conflict discussed in handbook constituted reversible error where Commissioner could not otherwise meet its Step Five burden to show that a significant number of jobs existed in the national economy).

In considering the conflicting case law, I conclude that the ALJ in this case was not obliged to develop the record further. First, as noted above, Plaintiff's counsel at the hearing, a seasoned practitioner, failed to challenge the Level 3 reasoning required by the cashier position. Second, while *Halde* holds that an "apparent" conflict requires further investigation, *Blanchard v Saul*, 2020 WL 4333574, at *3 (W.D. Wis. July 28, 2020)(*quoting Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)) defines an "'apparent conflict' [as] one that is 'obvious enough that the ALJ should have picked up on [it] without any assistance'". "If, however, 'there is not an actual conflict between the vocational expert's testimony and the

Dictionary of Occupational Titles, a claimant cannot possibly be harmed by an ALJ's failure to inquire.'" *Id.* (*quoting Sawyer v. Colvin*, 512 F. App'x 603, 610, 2013 WL 856509 (7th Cir. March 7, 2013); *See Sawyer* at 610-611 (no conflict between VE's job findings requiring Level 3 reasoning and hypothetical limitation to "simple tasks").

Finally, substantial evidence shows that Plaintiff is capable of jobs requiring Level 3 reasoning. Plaintiff graduated from high school, attended college, cared for her children, and possessed the cognitive skills to engage in a fairly wide range of activities. She previously performed at least one semiskilled position (Tr. 43). Notwithstanding the conditions of depression and anxiety, the psychological treating records do not suggest that she experienced deficiencies in reasoning. *See Blanchard* at *4 (professed inability to perform work requiring Level 3 reasoning undermined by evidence that the claimant "graduated high school and previously worked as an apartment caretaker, bartender, and customer service representative" and that "her mental status examinations, while showing depression and anxiety disorders, consistently noted her mood to be stable with normal thought processes and content, insight, perception, orientation, memory, and behavior"). The reasoning in *Blanchard* is applicable here. For this reason as well, the VE's job findings do not provide grounds for remand.

In closing, my recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's physical and mental conditions. Nonetheless, because the ALJ's determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen,*

*supra.*

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [ECF No. 13] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 11] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R. Steven Whalen
R. Steven Whalen
United States Magistrate Judge

Dated: March 5, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 5, 2021 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager

-25-